SCOTT E. BRADFORD, OSB # 062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:24-cr-00413-IM-01** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **MELVIN ISAID MIRALDA-CRUZ,** | |
| **Defendant.** | |

The government asks the Court to impose a sentence of 37 months' imprisonment, to be followed by a three-year term of supervised release.

The defendant was involved in selling fentanyl, an incredibly addictive, destructive, and deadly poison. Given the nature of the case, defendant's advisory sentencing guidelines, the societal harm caused by fentanyl, the defendant's overall role, and the defendant's personal history and characteristics the government believes the requested sentence is both reasonable and justified. The defendant will also very likely be deported to Honduras as a result of his conviction.

**Government's Sentencing Memorandum**                                          **Page 1**

**A.      Summary of Proceedings.**

On January 26, 2026, the defendant waived indictment by the grand jury and plead guilty to Count 1 of the Superseding Information which charged him with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A).  The maximum sentence the Court may impose is a term of life imprisonment, fine of $10,000,000, and at least five years of supervised release.  There is a potential mandatory minimum sentence of ten years' imprisonment.  There is also a $100 fee assessment.

A Presentence Report (PSR) has been completed.  The government has no objection to the PSR and believes the facts underlying the defendant's count of conviction (PSR ¶¶ 19 - 38) and initial Sentencing Guideline calculations (PSR ¶¶ 43 - 53) are accurately outlined in both the PSR and plea agreement.  After a review of defendant's sentencing memorandum and the filing in the related case in the Northern District of California, the government agrees with defense counsel that the defendant should also receive a "minor role" reduction in his guidelines.

In his plea agreement defendant admitted that:

> [O]n or about October 29, 2024, within the District of Oregon, he possessed with intent to distribute 400 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance. Defendant admits that on October 29, 2024, law enforcement served a search warrant on his residence in Portland, Oregon and seized more than 2 kilograms of a mixture and substance containing fentanyl, a blender with drug residue, baking dishes with drug residue, and multiple containers of Mannitol that belonged to him.  Trained law enforcement investigators would testify that the amount of fentanyl seized indicted that the fentanyl was possessed for purposes of further distribution..

Plea Agreement ¶ 6.

///

///

**Government's Sentencing Memorandum**                                                                 **Page 2**

This case arose from a Drug Enforcement Administration (DEA) investigation involving wiretaps of the defendant's younger brother who was distributing fentanyl in the San Francisco, California area.  PSR ¶¶ 19, 21, and 22.  Through that investigation the defendant was identified as working with his brother distributing fentanyl here in Portland, Oregon.  *Id.* ¶¶ 21 – 38.  The investigation eventually led to a search warrant being executed on the defendant's residence on NE Webster Street, in Portland.  *Id.* ¶¶ 36 – 38.

Inside the defendant's residence Investigators found the defendant, Pablo Marin Aguilera (the co-defendant), and a juvenile.  *Id.* ¶ 36.  Investigators also found, within the rafters of the utility room in the residence,  approximately 1,924 net grams of fentanyl in three separate packages.  *Id.* at ¶ 37.  Within one of the bedrooms Investigators found approximately 527 grams of fentanyl inside of a trash bag.  *Id.*  Inside a second bedroom, Investigators found another trash bag which containing approximately 301 grams of fentanyl powder and 37 grams of fentanyl pills (counterfeit M30 pills manufactured with fentanyl).  *Id.*  In a closet, Investigators found a baking dish that contained approximately 151 grams of fentanyl.  *Id.*  Investigators also found approximately $106,994 in U.S. currency inside the residence, 14 containers of Super Mannitol (a known cutting agent used to mix with fentanyl prior to sale), wire remitter receipts, implements to manufacture and press the powdered fentanyl for sale, and seven cell phones.  Id. at ¶ 38.

**B.      Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines.  18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind

**Government's Sentencing Memorandum**                                                          **Page 3**

throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting

*Kimbrough v. United States*, 552 U.S. 85, 108 (2007)).  "All sentencing proceedings are to begin

by determining the applicable Guideline range."  *Id*.

### Initial Base Offense Level (32)

In this case, because the two defendants (this defendant and Pablo Marin Aguilera, his

original co-defendant who has also been charged), appeared to be operating separately in their

drug distribution activities, the parties have sought to parse out which defendant was responsible

for the different amounts of fentanyl seized.  Here, the parties agree that defendant's relevant

conduct, pursuant to USSG §§ 1B1.3 and 2D1.1(a), involves between 1.2 kilograms and 4

kilograms of a mixture and substance containing fentanyl and results in an initial Base Offense

Level of 32.  PSR ¶ 43, Plea Agreement ¶ 8.

### Maintaining Premises (two-level upward adjustment)

Pursuant to USSG §2D1.1(b)(12), the U.S. Probation Office has recommended a two-

level upward adjustment because the defendant maintained premises for the purpose of

manufacturing or distributing a controlled substance.  PSR ¶ 44.  Although not noted in the Plea

Agreement, the government believes this adjustment applies.[1]  As the PSR notes:

> Pursuant to USSG §2D1.1(b)(12), if the defendant maintained a
> premises for the purpose of manufacturing or distributing a
> controlled substance, increase by 2 levels.  The defendant lived at
> 425 Northeast Weber Street in Portland.  During an execution of a
> search warrant at the residence, evidence indicative of drug
> distribution was located throughout the residence, including
> distributable pre-packaged quantities of fentanyl, a significant

---

[1]     As the Plea Agreement notes, the "guideline calculations above are set forth as estimates
only and the parties understand that the final guideline calculations and Criminal History
Category will be determined by the Court following the receipt of a Presentence Report and
these initial estimates are not binding upon the parties."  Plea Agreement ¶ 13.

**Government's Sentencing Memorandum**                                                    **Page 4**

amount of U.S. currency, a cutting agent, and implements to manufacture and press the powdered fentanyl.  The defendant had also been seen coming and going from the residence to conduct suspected drug deliveries.  Therefore, this 2-level increase applies.

PSR¶ 44.

As the Ninth Circuit Court of Appeals has recently stated, the maintaining premises enhancement applies where a defendant uses a residence "as the central hub for his drug-trafficking business." *United States v. Tekola*, 169 F.4th 947, 953 (9th Cir. 2026).  In *Tekola*, within his apartment the defendant "stored his drugs and other tools of the drug-dealing trade, [was] where he processed and recorded the drugs he sold, and [was] a default location where trusted customers picked up drugs." *Id*. at 952.  Whether a defendant also uses the premises as a primary residence is irrelevant, so long as they "regularly used the premises both as a primary residence and for substantial drug trafficking activities." *Id*. at 951.  Here, the defendant did so.

The defendant stored the fentanyl he sold at the residence; he possessed pre-packaged amounts of fentanyl at the residence; he possessed a large amount of U.S. Currency, believed to be from the sale of fentanyl, at the residence; he possessed the implements to manufacture fentanyl at the residence; and, he possessed a significant amount of fentanyl cutting agents (containers of Mannitol) at the residence.  Whether he also lived there is irrelevant because the residence also clearly functioned "as the central hub for his drug-trafficking business."  The premises enhancement should apply.

### Minor Role (four-level total reduction)

The government did not initially view the defendant as a "minor" participant in this criminal activity based upon the limited scope of conduct he was being held responsible for in

the plea agreement. The U.S. Probation Office likewise did not recommend such a reduction. However, given the government's filings in the related Northern District of California case which involved the defendant's younger brother Eldin Jahir Miralda-Cruz, we now concur with defendant's request for a minor role reduction and believe such a result is fair. *See* Defendant's Supplement to the PSR, at 7-9*;* United States' Sentencing Memorandum, *U.S. v. Eldin Jahir Miralda-Cruz*, Case No. 4:24-cr-00593-JST (N.D. Calif. Doc. 30), at 2 - 4 (August 8, 2025) (hereinafter the Eldin Miralda-Cruz Sentencing Memo).[2]

Under the Sentencing Guidelines the Court may reduce a defendant's offense level by two levels if he "was a minor participant in any criminal activity." USSG § 3B1.2(b). "The defendant bears the burden of proving that he is entitled to a downward adjustment based on his role in the offense." *United States v. Cantrell*, 433 F.3d 1269, 1282 (9th Cir. 2006) (citation omitted). To carry this burden, the defendant must prove by a preponderance of the evidence that he was "substantially less culpable than the average participant in the criminal activity." USSG § 3B1.2, comment. (n.3 (A)); *see United States v. Davis*, 36 F.3d 1424, 1436 (9th Cir. 1994). The relevant pool for comparison of her role in the criminal activity is "all actors who participated" in the "specific criminal scheme" if the court finds "sufficient evidence of their existence and participation." *United States v. Rojas-Millan*, 234 F.3d 464, 473-74 & n.5 (9th Cir. 2000). Identifying hypothetical participants, or participants in the abstract, is not enough. *See e.g., United States v. Rosas*, 615 F.3d 1058, 1068 (9th Cir. 2010) ("Every drug trafficking

---

[2]    The government in the related Northern District of California case sought a sentence of 48 months' imprisonment for the defendant's younger brother Eldin Miralda-Cruz who, although just turning 18 during the course of the investigation, was described as the one directing the co-conspirators who were selling fentanyl in both the San Francisco, California and Portland, Oregon areas. Eldin Miralda-Cruz Sentencing Memo at 2.

**Government's Sentencing Memorandum**                                                      **Page 6**

defendant could point to an unknown network preceding them in the drug trade.  Such an

argument would normally be ineffective when considering whether the defendant is entitled to a

mitigating role reduction.").  A minor role adjustment is "generally warranted if the defendant's

primary function in the offense was performing another low-level trafficking function, such as

distributing controlled substances in user-level quantities for little or no monetary compensation

or with a primary motivation other than profit (e.g. the defendant was otherwise unlikely to

commit such an offense and was motivated by an intimate or familial relationship, or by threats

or fear to commit the offense)."  USSG § 2D1.1(e)(2)(B)(ii) (emphasis added).

At its core, the overarching question is whether the defendant was "substantially less

culpable than the average participant in the criminal activity" for which he is being sentenced

based upon the "facts of the particular case."  USSG. § 3B1.2, comment. (n.3 (A) and (B)).  In

guiding the determination the Commission added a "non-exhaustive" list of five factors for

courts to consider when evaluating a defendant's role under this baseline standard.  USSG §

3B1.2, comment. (n.3(C)).   These factors are:

> (i)     the degree to which the defendant understood the scope and
>         structure of the criminal activity;
>
> (ii)    the degree to which the defendant participated in planning
>         or organizing the criminal activity;
>
> (iii)   the degree to which the defendant exercised decision-
>         making authority or influenced the exercise of decision-
>         making
>         authority;
>
> (iv)    the nature and extent of the defendant's participation in the
>         commission of the criminal activity, including the acts the
>         defendant performed and the responsibility and discretion
>         the defendant had in performing those acts; [and]

**Government's Sentencing Memorandum**                                **Page 7**

> (v)    the degree to which the defendant stood to benefit from the criminal activity.

USSG § 3B1.2 comment. (n.3(C)(i – v)).

The commentary does not limit the significant discretion afforded to sentencing courts. A district court may apply a role reduction "even if some of the factors weigh against doing so," refuse to apply the reduction "even if some of the factors weigh in favor" of doing so, and "consider other reasons for granting or denying a . . . role reduction." *United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016).

Here, as the government noted in their Eldin Miralda-Cruz Sentencing Memo, Eldin Jahir Miralda-Cruz, the younger brother of our defendant, "directed co-conspirators, who were older than him, including one who went by the name "Tito," to sell fentanyl in Oregon;"[3] "directed Tito and others in Portland to possess, prepare, and distribute fentanyl to purchasers in Portland and elsewhere on Mr. Miralda-Cruz's behalf;" "directed Tito to prepare the substances containing fentanyl for distribution, including by mixing the fentanyl with cutting agents in certain proportions to increase the volume of the substance containing fentanyl for distribution to others;" and "direct[ed] Tito to distribute the fentanyl to those same purchasers in Portland . . . [and] [t]hose directions included detailing the amounts of fentanyl to be distributed to the purchasers, the price they should pay for the fentanyl, and when and where the distribution were to take place." Eldin Miralda-Cruz Sentencing Memo at 2, 3, and 4. Given the government's prior filing we now concur with defendant Melvin Isaid Miralda-Cruz's request for a two-level minor role reduction.

---

[3]    "Tito" was the defendant Melvin Isaid Miralda-Cruz.

**Government's Sentencing Memorandum**                                    **Page 8**

Should the Court grant this minor reduction, pursuant to USSG § 3B1.2, then the defendant's Base Offense Level of 32 should also be decreased by additional two levels, pursuant to USSG § 2D1.1(a)(5)(i), which results in an overall reduction of four-levels from the initial Base Offense Level identified above.

### Safety Valve (two-level reduction)

Because the defendant satisfies the "safety valve" criteria in 18 U.S.C. § 3553(f) and USSG § 2D1.1(b)(18), the parties are asking the Court to grant him a two-level downward departure in his Sentencing Guidelines.  PSR ¶ 45, Plea Agreement ¶ 9.

### Zero Point Offender (two-level reduction)

Because the defendant also qualifies as a "Zero Point Offender," pursuant to USSG § 4C1.1, the parties will recommend a two-level downward adjustment in his Sentencing Guidelines range.  PSR ¶ 50, Plea Agreement ¶ 10.

### Acceptance of Responsibility (three-level reduction)

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to USSG § 3E1.1, the parties ask that the Court grant the defendant a three-level reduction in his offense level.  PSR ¶¶ 51 - 52, Plea Agreement ¶ 11.

### 3553(a) Variance (two-level reduction)

Pursuant to 18 U.S.C. § 3553(a), based upon the nature of the offense, the history and characteristics of the defendant, defendant's indication at an early stage in the proceedings about his desire to resolve his case, defendant's willingness to forgo any wiretap related litigation, how similarly situated defendants have been handled by the USAO and the courts, and to achieve a

///

**Government's Sentencing Memorandum**                                                              **Page 9**

fair and just resolution of the case, the government will recommend that the Court to grant the defendant a two-level downward variance in his overall offense level.  Plea Agreement ¶ 12.

The U.S. Probation Office has concurred in the overall recommendation for a variance; however they have advocated for the equivalent of a three-level downward variance.  PSR Sentencing Recommendation at *1.  The government does not support this request for a three-level downward variance.

**Government's Recommended Guideline Range**

The government's Sentencing Guideline calculations, coupled with a two-level 3553(a) downward variance, results in an Adjusted Offense Level of 21 and with a Criminal History Category of I, an advisory sentencing guideline range of 37 to 46 months' imprisonment.

Defendant has been in federal custody since the federal arrest on October 29, 2024.

**C.    Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a), we ask the Court to impose a sentence of 37 months' imprisonment, to be followed by a term of supervised release.  Given the Sentencing Guideline calculations, the harm caused by fentanyl, and the 48-month sentence sought by the government in his brother's Northern District of California case, we believe such a sentence is reasonable.

The defendant was selling fentanyl, an extremely addictive, destructive, and deadly poison that has been devastating the community.  According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA region.  In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho.  Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's.  Together, these two substances accounted for 41.3% of overdose fatalities in both states.

**Government's Sentencing Memorandum**                                    **Page 10**

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2026 THREAT ASSESSMENT, 2025, at 5 (https://oridhidta.org/reports).

We have no doubt that the defendant came to the United States to escape the poverty he experienced in Honduras. However, that experience does not provide any justification or excuse for the harm he in turn inflicted upon others. Fentanyl kills. Even in very small amounts, fentanyl is a deadly poison and this defendant distributed that poison without any regard for the harm he was causing others.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 37 months' imprisonment is reasonable. We ask the Court to impose it, to be followed by a term of supervised release.

///

///

///

**Government's Sentencing Memorandum**                                                                 **Page 11**

At the time of sentencing the USAO will ask the Court to dismiss the original indictment.

There is an appeal waiver.

Following his time in custody the defendant will likely be deported to Honduras.

Dated: June 10, 2026.                                   Respectfully submitted,

                                                        SCOTT E. BRADFORD
                                                        United States Attorney


                                                        /s/ *Scott Kerin*

                                                        SCOTT M. KERIN, OSB # 965128
                                                        Assistant United States Attorney